Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Southern Division

| | |
|---|---|
| KEVIN KERCHER, | Case No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION SOLUTIONS, INC., SOFI BANK, N.A., and UPSTART NETWORK, INC., | |
| Defendants. | |

COMES NOW the Plaintiff, KEVIN KERCHER, by and through his undersigned counsel, for his cause of action against Defendants, EXPERIAN INFORMATION SOLUTIONS, INC., SOFI BANK, N.A., and UPSTART NETWORK, INC. (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.1–1785.36 ("CCRAA") as follows:

### PRELIMINARY STATEMENT

1.	This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA and CCRAA.

2.	Today in America there are three major consumer reporting agencies, Equifax Information Services, LLC (hereinafter "Equifax"), Trans Union LLC

1

(hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.    Consumer reporting agencies that create consumer reports, like Experian, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.    When a consumer, like Plaintiff, disputes information through the CRAs, those disputes are transmitted to the party furnishing the information (in this case, SoFi Bank and Upstart). The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.    The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICATION, VENUE, AND PARTIES

6.    The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7.    Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.    Venue is proper in this District as the principal address of Experian is in this District; a substantial portion of the violations described in this Complaint occurred in this District; and Defendants transact business within this District.

9.    Plaintiff is a natural person and resident of San Bernardino County in the State of California. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10.     Experian is a corporation headquartered at 475 Anton Boulevard, Costa Mesa, California 92626.

11.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

13.     SoFi Bank is an FDIC insured national bank headquartered at 2750 E Cottonwood Parkway, Cottonwood Heights, Utah 84121, that conducts business in the State of California.

14.     SoFi Bank is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

15.     Sofi Bank furnished Plaintiff's information to the CRAs, including but not limited to Experian, which was inaccurate.

16.     Upstart is a corporation headquartered at 2950 S. Delaware Street, Suite 300, San Mateo, California 94403.

17.     Upstart is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

18.     Upstart furnished Plaintiff's information to the CRAs, including but not limited to Experian, which was inaccurate.

## FACTUAL ALLEGATIONS
### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

19.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated*

3

1   *Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical

2   role that CRAs play in the credit markets and the serious consequences borne by

3   consumers because of inaccurate information disseminated in consumer credit

4   reports prepared by CRAs, Congress placed on a CRA what can only be described

5   as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b),

6   1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-

7   cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

8       20.   "Section 1681e(b) sets forth the CRAs' overall du[t]y:

9       (b) Accuracy of report. Whenever a consumer reporting agency
        prepares a consumer report it shall follow reasonable procedures to
10      assure maximum possible accuracy of the information concerning the
        individual about whom the report relates."
11

12  *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874,

13  at *4 (E.D. Va. Mar. 18, 2011).

14      21.   Section 1681i(a), on the other hand requires much more from a CRA

15  after a consumer has placed it on notice of an inaccuracy through his/her dispute:

16      [I]f the completeness or accuracy of any item of information contained
        in a consumer's file at a consumer reporting agency is disputed by the
17      consumer and the consumer notifies the agency directly . . . of such
        dispute, the agency shall, free of charge, conduct a reasonable
18      reinvestigation to determine whether the disputed information is
        inaccurate and record the current status of the disputed information, or
19      delete the item from the file . . . before the end of the 30-day period[.]

20  15 U.S.C. § 1681i(a)(1)(A).

21      22.   Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to

22  investigate and correct inaccurate or incomplete information brought to its attention

23  by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160

24  (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or

25  systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit*

26  *Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

27      23.   It has long been the law that a CRA, such as Experian, does not fulfill

28  its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by

4

merely contacting the creditor who supplied the dispute item.  *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

24.    That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. TransUnion Corp.*, 115 F.3d 220, 225 ( 3d Cir. 1997).

25.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); *see* Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

26.    Further, as Experian is aware, even though the term "investigation" is not used in § 1681e(b), it is clear that Experian has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

27.     It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

28.     Today, furnishers such as SoFi Bank and Upstart have their own independent rules under the FCRA, principally those found at 15 U.S.C. § 1681s-2. The duties on furnishers were enacted almost thirty years ago, in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### *Plaintiff Discovers Experian Was Inaccurately Reporting Accounts with SoFi Bank and Upstart on his Credit*

29.     Plaintiff is alleged to owe a debt to SoFi Bank, partial account number PL107**** (hereinafter "SoFi Bank Account"). Plaintiff does not have a SoFi Bank account, nor has he ever applied or gave permission to anyone to apply using his information for an account with SoFi Bank.

30.     Plaintiff is alleged to owe a debt to Upstart, partial account number L348*** (hereinafter "Upstart Account"). Plaintiff does not have an Upstart account, nor has he ever applied or gave permission to anyone to apply using his information for an account with Upstart.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary interpretations/110720fcrareport.pdf.

6

31.     On or about October of 2022, Plaintiff received an email from Credit Karma about new credit checks and inquiries. However, Plaintiff had not recently applied for any credit accounts or loans.

32.     Upon further review of his email, Plaintiff discovered new accounts which he did not authorize were listed on his credit reports.  He communicated directly with both SoFi Bank and Upstart indicating these accounts were fraudulent.

33.     Shortly thereafter, Plaintiff obtained a copy of his Experian credit report and became aware of the SoFi Bank Account and Upstart Account listed on his credit report that did not belong to him.

34.     Due to these fraudulent accounts being reported incorrectly by Experian, Plaintiff's credit score declined, and as a result, Plaintiff became hesitant to use his credit.

35.     On or about March 22, 2023, Plaintiff again obtained a copy of his Experian credit report and discovered the unauthorized Sofi Bank Account and Upstart Account continued to appear on his credit report.

### *Plaintiff Disputes the Inaccurate Account with Experian*

36.     As a result of the inaccurate reporting by Experian, on or about April 7, 2023, Plaintiff mailed a detailed written dispute letter to Experian concerning the inaccurate information being reported. Plaintiff explained that they were reporting an address and hard inquiries that did not belong to him. Further, Plaintiff explained the SoFi Bank Account and Upstart Account were not his and do not belong to him. Plaintiff included an image of his driver's license and recent utility bill to confirm his identity. Plaintiff also included images of the erroneous credit reporting, letters from Upstart and SoFi, and images of his filed Federal Trade Commission Identity Theft Report, number 154004332.

37.     Plaintiff mailed his detailed dispute letter to Experian via USPS Certified Mail, tracking number 9505 5067 0431 3097 7114 38.

38.     On or about May 2, 2023, Plaintiff received dispute results from Experian which stated the SoFi Bank Account and Upstart Account were verified as accurate and would remain on his credit report. However, Experian did remove the erroneous hard inquiries from SoFi Bank that were appearing on Plaintiff's Experian credit report.

39.     Despite providing Experian with all the relevant information needed to prove the accounts were fraudulent and unauthorized, Experian continued to report inaccurate accounts.

40.     Experian failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnishers, SoFi Bank and Upstart.

41.     Experian never attempted to contact Plaintiff during the alleged investigation.

42.     Upon information and belief, Experian notified SoFi Bank of Plaintiff's dispute. However, SoFi Bank failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

43.     Upon information and belief, Experian notified Upstart of Plaintiff's dispute. However, Upstart failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

44.     Interestingly, in response to Plaintiff's dispute, on or about April 17, 2023, Experian added a Personal Statement within Plaintiff's Experian credit report stating he was a victim of ID Fraud:

**Personal Statements**

ID FRAUD VICTIM ALERT FRAUDULENT APPLICATIONS MAY BE SUBMITTED IN MY NAME OR MY
IDENTITY MAY HAVE BEEN USED WITHOUT MY CONSENT TO FRAUDULENTLY OBTAIN GOODS OR
SERVICES. DO NOT EXTEND CREDIT WITHOUT FIRST CONTACTING ME PERSONALLY AND
VERIFYING ALL APPLICATION INFORMATION AT DAY OR EVENING 619-730-8460 . THIS VICTIM
ALERT WILL BE MAINTAINED FOR SEVEN YEARS BEGINNING 04-17-23.

45.     Due to the continued inaccurate reporting, on or about May 16, 2023, Plaintiff mailed a second dispute letter to Experian regarding the fraudulent SoFi Bank Account and Upstart Account. Plaintiff reiterated the accounts were not his and do not belong to him. Plaintiff again included an image of his driver's license and recent utility bill to confirm his identity. Plaintiff also included images of the erroneous credit reporting, the dispute results, letters from Upstart and SoFi, and images of his filed Federal Trade Commission Identity Theft Report, number 154004332.

46.     Plaintiff mailed his detailed dispute letter to Experian via USPS Certified Mail, tracking number 7022 1670 0001 3704 0215.

47.     Despite delivery confirmation on May 19, 2023, Plaintiff never received dispute results in the mail from Experian. Experian violated the FCRA by refusing to investigate and to communicate the results of Plaintiff's dispute.

48.     Having not received a response, Plaintiff sent a third detailed dispute letter to Experian on or about June 20, 2023, regarding the fraudulent SoFi Bank Account and Upstart Account. Plaintiff once again explained the accounts were not his and do not belong to him. Plaintiff again included an image of his driver's license and recent utility bill to confirm his identity. Plaintiff also included images of the erroneous credit reporting, the dispute results, letters from Upstart and SoFi, and images of his filed Federal Trade Commission Identity Theft Report, number 154004332.

49.     Plaintiff mailed his detailed dispute letter to Experian via USPS Certified Mail, tracking number 7022 1670 0001 3694 6273.

50.     Despite delivery confirmation on June 26, 2023, Plaintiff never received dispute results in the mail from Experian. Experian violated the FCRA by refusing to investigate and to communicate the results of Plaintiff's dispute.

51.     However, on or about June 28, 2023, Plaintiff obtained a copy of his Experian credit report. To Plaintiff's relief, the SoFi Bank Account was no longer being reported to his credit report. Upon review, Plaintiff was frustrated to see the Upstart Account continued to be reported on his credit file. Further, Plaintiff observed a comment on the Upstart Account which stated, "This item remained unchanged from the processing of your dispute in May 2023".

52.     Experian failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnishers, SoFi Bank and Upstart.

53.     Experian never attempted to contact Plaintiff during the alleged investigation.

54.     Upon information and belief, Experian notified Upstart of Plaintiff's dispute. However, Upstart failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

55.     Experian has never attempted to contact Plaintiff about his disputes and refused to conduct a meaningful and thorough investigation into his disputes as it is required to by law or otherwise make his credit file accurate.

56.     Despite Plaintiff's best efforts to have the fraudulent accounts corrected, Experian continued to report the inaccurate and fraudulent Upstart Account on Plaintiff's credit report. Accordingly, Plaintiff's damages are ongoing as of the filing of this Complaint.

57.     Experian simply continued to parrot off the back of SoFi Bank and Upstart and has not conducted an actual investigation despite Plaintiff's pleas.

58.    Plaintiff continues to suffer as of the filing of this Complaint with Defendants' reluctance to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

### *Experian Did Not (and Does Not)*
### *Conduct Any Investigation of Most Consumer Disputes*

59.    Unknown to Plaintiff until this lawsuit, it has long been the practice of Experian, to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.[2]

60.    This dispute processing entity is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

61.    In fact, Experian strongly encourages consumers to make disputes through its online website. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian. It gets sent to Experian's creditor customers (such as SoFi Bank and Upstart) for their sole review and consideration.

---

[2] Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). In recent litigation by Plaintiff's Counsel in the Eastern District of Virginia, *Sublett v. Nissan of Richmond, et al.*, No. 3:20-cv-00156 (E.D. Va.), however, Experian presented the supposed third-party Chilean dispute investigator pursuant to Plaintiff's notice of deposition under Rule 30. To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue her 1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

62. Experian did not conduct any reinvestigation of Plaintiff's disputes. Instead, it merely caused Plaintiff's disputes to be removed from Experian's immediate control to be saved within a database by an overseas data processing vendor.

### Experian Forwarded Plaintiff's Disputes to SoFi Bank and Upstart, Who Did Nothing

63. In each instance in which Plaintiff disputed the SoFi Bank account and the Upstart account with Experian, Experian forwarded Plaintiff's disputes to the furnishers (SoFi Bank and Upstart) using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to CRAs.

64. e-Oscar is also the system by which both SoFi Bank and Upstart have agreed to accept such consumer disputes from the CRAs.

65. After receiving Plaintiff's disputes through e-Oscar, SoFi Bank and Upstart both became obligated under the FCRA to investigate Plaintiff's disputes.

66. SoFi Bank and Upstart failed to reinvestigate Plaintiff's disputes.

67. Upstart still continues to report that Plaintiff is financially responsible for a debt with Upstart that he did not incur.

68. The SoFi Bank debt wasn't removed from Plaintiff's credit until after his third dispute.

69. The information that both SoFi Bank and Upstart furnished to Experian was at all times inaccurate.

70. On or about a date better known to SoFi Bank and Experian, Experian furnished Plaintiff's disputes to SoFi Bank.

71. On or about a date better known to Upstart and Experian, Experian furnished Plaintiff's disputes to Upstart.

72. SoFi Bank and Upstart both failed to reasonably investigate Plaintiff's disputes received from Experian, in violation of § 1681s-2(b)(1)(A) of the FCRA.

73.     Upstart further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian and prior to the commencement of this action.

74.     Experian responded to Plaintiff's disputes claiming the information reported by SoFi Bank and Upstart was verified as accurate. This response confirms that Experian communicated Plaintiff's disputes to SoFi Bank and Upstart.

75.     By their actions as described herein, SoFi Bank and Upstart both furnished false credit information in an attempt to oppress and harass Plaintiff into paying debts that he did not owe.

### *Plaintiff Suffered Actual Harm*

76.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    i.    Monies lost by attempting to fix his credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time;

    ii.    Loss of time attempting to cure the errors;

    iii.    Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Defendants' reluctance to fix the errors;

    iv.    Reduction in credit score;

    v.    Delay in applying for personal loans and lines of credit due to fear of denials from Plaintiff's lowered credit score; and

    vi.    Defamation as Defendants published inaccurate information to third party entities.

### *Defendant's Violations were Willful*

77.     The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones

13

as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

78.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

79.    As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  The Defendant's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

80.    Experian has received many disputes and other complaints regarding the creditors at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

81.    Just in federal court alone, during the last five years the creditor-furnishers disputed by Plaintiff have had to defend, collectively, over fifty consumer lawsuits.

82.    In many of these FCRA lawsuits brought by a consumer against Upstart, and in most of these FCRA lawsuits brought by a consumer against SoFi Bank, Experian, was named a co-defendant.

83.    Experian knew or should have known of this litigation history. Experian has access to PACER and uses it to investigate and monitor such consumer complaints.

84.    The CFPB has maintained a Consumer Complaint database since 2017.  It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the

Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

85.   Defendants regularly receive unredacted consumer dispute details from this database.

86.   Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

87.   Further, over 90,000 complaints regarding Experian were based largely on their failure to reasonably investigate consumer disputes.

88.   SoFi Bank and Upstart combined have approximately 285 consumer credit complaints appearing in the CFPB's database.

89.   Just in the last 12 months alone, Experian has been sued by consumers alleging their violation of the FCRA almost 2,500 times.  Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute.  This complaint history has been true for nearly every year over the last decade.

90.   While the thousands of consumer complaints and hundreds of consumer disputes alone would have put Experian on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed Experian (and the other largest CRAs, TransUnion and Equifax) on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

91.   Experian, TransUnion, Equifax had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting

agency does not act reasonably under the FCRA by deferring entirely to another source of information.").

92.     Experian, TransUnion, and Equifax have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

93.     In 2015, a large group of state Attorneys General forced a consent order from the Credit Reporting Agencies (including Experian, TransUnion, and Equifax) by which they were required to develop procedures necessary to comply with the FCRA.[3]  The AG Settlement required amongst many changes and mandates that Experian comply with § 1681i(a).

94.     The AG Settlement also required the Credit Reporting Agencies to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, Experian, TransUnion and Equifax did not meaningfully comply with the AG Settlement in these regards.

95.     Experian, TransUnion, and Equifax are also aware of substantive and detailed criticism by public interest groups about their automated dispute system.  For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute.  That report was updated in 2019.  AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[4]

96.     The NCLC Report summarized its context:

---

[3]     *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

[4]     *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

16

Ten years ago, the National Consumer Law Center (NCLC) issued *Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports,* the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian, and TransUnion) and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

97. Among many of the Defendants' accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

98. Despite the notice and judicial, regulatory, and public interest criticism, Experian has refused to change their dispute investigation process because it would cost too much money to do so.

99.    Experian's procedures imposed on Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CAUSES OF ACTION

### COUNT I
#### Violation of 15 U.S.C. § 1681e(b) as to
#### Defendant Experian Information Solutions, Inc.

100.    Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

101.    Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning Plaintiff.

102.    As a result of this conduct, action and inaction of Experian, Plaintiff suffered damages, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

103.    Further, after Plaintiff's detailed disputes put Experian on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, they ignored such information and did not use any human or substantive review to confirm and verify that their procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

104.    Experian furnished multiple consumer reports to third parties containing the inaccurate tradeline information and Experian did so after receiving notice of these inaccuracies.

105.   Experian's conduct, actions and inactions were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

106.   As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to recover Plaintiff's actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

107.   Plaintiff is entitled to recover costs and attorney's fees from Experian, pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Violation of 15 U.S.C. § 1681i as to
### Defendant Experian Information Solutions, Inc.

108.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

109.   Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

110.   Further, Experian violated Section 1681i by conducting ***no investigation at all***. Section 1681i demands that when Plaintiff notified Experian, directly of Plaintiff's disputes, that party—the consumer reporting agency who received the disputes—must investigate those disputes. The statute does not contemplate someone other than Experian conducting the investigation.

111.   As a result of this conduct, action and inaction of Experian, Plaintiff suffered damages, including without limitation: loss of ability to benefit from lower

interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

112.   As a result of Experian's violations of 15 U.S.C. § 1681i, Plaintiff is entitled to recover Plaintiff's actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o or, in the alternative, statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

113.   Experian's conduct, actions, and inactions were willful, rendering each individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

114.   Plaintiff is entitled to recover costs and attorneys' fees from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### Violation of 15 U.S.C. § 1681g as to
### Defendant Experian Information Solutions, Inc.

115.   Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully stated herein.

116.   After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681g by failing to disclose to Plaintiff all information in Plaintiff's credit file.

117.   Plaintiff provided to Experian appropriate and sufficient proofs of identity to allow Experian to create a high degree of confidence in knowing the identity of Plaintiff.

118.   Despite the sufficient proofs of identification produced by Plaintiff, Experian refused to conduct any independent investigations into Plaintiff's disputes and provide any documentation or results to Plaintiff.

119.   As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damages, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain

20

stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

120. As a result of Experian's violations of 15 U.S.C. § 1681g, Plaintiff is entitled to recover Plaintiff's actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o or, in the alternative, statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

121. Experian's conduct, actions, and inactions were willful, rendering each individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

122. Plaintiff is entitled to recover costs and attorneys' fees from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### Violation of § 1785.16 of the CCRAA as to
### Defendant Experian Information Solutions, Inc.

123. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully stated herein.

124. At all times relevant to this action, Experian is subject to and must abide by the law of the State of California, including, without limitation, California Civil Code § 1785.16 (the "CCRAA").

125. The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA.

126. Experian violated § 1785.16 by failing to reinvestigate information disputed by Plaintiff as clearly indicated within the disputes Experian received. Experian was provided with and itself possessed information clearly indicating an error on the reported information on Plaintiff's credit report; however, Experian failed to acknowledge, investigate, update, or delete the erroneous accounts or inaccurate personal information reported.

127.   As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.16(a).

128.   As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Experian, including punitive damages of $100 to $5,000 per willful violation.

129.   Plaintiff is also entitled to injunctive relief against Experian pursuant to Cal. Civ. Code § 1785.31(b).

**COUNT V**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B)**
**as to Defendants SoFi Bank and Upstart**

130.   Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

131.   On at least one occasion within the last two years, by example only and without limitation, SoFi Bank and Upstart each violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after the disputes were furnished to them by Experian.

132.   On one or more occasions within the past two years, by example only and without limitation, SoFi Bank and Upstart each violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

133.   When Plaintiff submitted his detailed, written disputes and enclosures to the CRAs, they use a dispute system named "e-Oscar," which has been adopted by the CRAs and by their furnisher-customers such as SoFi Bank and Upstart. It is an automated system and the procedures used by the CRAs are systemic and uniform.

134.   When a CRA receives a consumer dispute, the CRA (usually via an offshore, outsource vendor), translates that dispute into an "ACDV" form.

135.   The ACDV form is the method by which SoFi Bank and Upstart have both elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

136.   Based on the manner in which Experian responded to – or did not respond to Plaintiff's disputes, representing that SoFi Bank and Upstart had both "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian did in fact forward Plaintiff's disputes via an ACDV(s) to SoFi Bank and Upstart.

137.   SoFi Bank and Upstart both understood the nature of Plaintiff's disputes when they each received the ACDVs from Experian.

138.   Notwithstanding the above, SoFi Bank and Upstart both follow a standard and systemically unlawful process when they receive the ACDV disputes. Basically, all SoFi Bank and Upstart do is review their own internal computer screens for the account and repeat back to the ACDV system the same inaccurate information that each of them had already reported to the CRAs.

139.   When SoFi Bank receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

140.   When Upstart receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

141.   On information and belief, Plaintiff alleges that the procedures followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that SoFi Bank and Upstart intended for their respective employees or agents to follow.

142.   As a result of SoFi Bank's and Upstart's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial

loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

143.   The violations by both SoFi Bank and Upstart were willful, rendering them both liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, SoFi Bank and Upstart were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

144.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from both SoFi Bank and Upstart in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT VI**
**Violation of 15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**as to Defendants SoFi Bank and Upstart**

145.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

146.   On one or more occasions within the past two years, by example only and without limitation, SoFi Bank and Upstart each violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing inaccuracies within Plaintiff's credit files with Experian without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

147.   Specifically, SoFi Bank and Upstart both failed to add CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian.

148.   On information and belief, Plaintiff alleges that both SoFi Bank and Upstart rarely—if ever—add the compliance condition code or other notation that an account is disputed when they respond to e-Oscar ACDVs.

149. SoFi Bank knew that Plaintiff previously disputed the fraudulent account directly with SoFi Bank and its agents.

150. Upstart knew that Plaintiff previously disputed the fraudulent account directly with Upstart and its agents.

151. Plaintiff's disputes were, at a minimum, *bone fide*.

152. On information and belief, Plaintiff alleges that the procedures SoFi Bank and Upstart followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that SoFi Bank and Upstart intended their respective employees or agents to follow.

153. On information and belief, Plaintiff alleges that SoFi Bank's employee or agent did not make a mistake (in the way in which they followed SoFi Bank's procedures) when they received, processed, and responded to the Experian ACDVs and did not include the proper code in the CCC field.

154. On information and belief, Plaintiff alleges that Upstart's employee or agent did not make a mistake (in the way in which they followed Upstart's procedures) when they received, processed, and responded to the Experian ACDVs and did not include the proper code in the CCC field.

155. On information and belief, Plaintiff alleges that neither SoFi Bank nor Upstart have materially changed their FCRA investigation procedures regarding the CCC field in ACDVs after learning of their respective failures in this case.

156. As a result of SoFi's and Upstart's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

157. The violations by SoFi Bank and Upstart were willful, rendering them each liable for punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. In the alternative, SoFi Bank and Upstart were negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

158.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from SoFi Bank and Upstart in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and§1681o.

## COUNT VII
### Violation of 15 U.S.C § 1681s-2(b)(1)(E) as to Upstart

159.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

160.   Upstart violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Experian and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from Upstart's failure to investigate as articulated herein, after Upstart received notice of Plaintiff's dispute from Experian.

161.   As a result of this conduct, action, and inaction of Upstart, Plaintiff suffered actual damages, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

162.   Upstart's conduct, action and inaction was willful, rendering it individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

163.   Plaintiff is entitled to recover costs and attorneys' fees from Upstart pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT VIII
### Violation of § 1785.25 of the CCRAA as to
### SoFi Bank and Upstart

166.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

167.   Section 1785.25(a) of the CCRAA requires that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." CAL. CIV. CODE ANN. § 1785.25(a).

168.   The Federal Fair Credit Reporting Act does not preempt Section 1785.25(a). 15 U.S.C. § 1681t(b)(1)(F)(ii).

169.   The phrase "incomplete or inaccurate" in § 1785.25(a) requires furnishers of credit information from not only "refrain[ing] from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading. The statutory term 'should have known' imparts a test of reasonableness." *Gamble v. Synchrony Bank*, No. EDCV 19-1229 JGB (SPx), 2020 WL 4258646, at *4 (C.D. Cal. Apr. 30, 2020). In that regard, the critical question is thus whether a reasonable furnisher would have known that the furnished information was incomplete or inaccurate.

170.   An item on a credit report can be "incomplete or inaccurate" because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.

171.   SoFi Bank and Upstart both violated § 1785.25(a) of the CCRAA by reporting to CRAs information about Plaintiff that was inaccurate because Plaintiff did not owe any amount to either SoFi Bank or Upstart.

172.   Both SoFi Bank and Upstart knew or should have known that Plaintiff did not open the respective accounts, because Plaintiff had previously alerted both companies that the accounts were opened fraudulently, and both companies had access to account origination information that would permit them to learn the truth.

173.   Upon information and belief, as a standard practice, SoFi Bank and Upstart both reported this inaccurate and incomplete information about Plaintiff to the CRAs as a means to force Plaintiff to pay amounts he did not truly owe.

174.   Discovery will show that the conduct by both SoFi Bank and Upstart is a part of a broader practice by both furnishers of frequent and persistent noncompliance with California's credit reporting laws.

175.   Plaintiff suffered actual damages as a result of SoFi Bank's and Upstart's violations, including without limitation: loss of ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

176.   Based on SoFi Bank's and Upstart's noncompliance with the CCRAA, Plaintiff seeks actual damages, punitive damages, reasonable attorneys' fees, and costs, pursuant to CAL. CIV. CODE § 1785.31.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KEVIN KERCHER, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages individually against each Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., SOFI BANK, N.A., and UPSTART NETWORK, INC., attorneys' fees and costs, prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

DATED this 1st day of February, 2024.

1

Respectfully Submitted,

2

**KEVIN KERCHER**

3

**/s/ Craig C. Marchiando**

4

Craig C. Marchiando (SBN 283829)
CONSUMER LITIGATION ASSOCIATES, P.C.

5

4 Embarcadero Center Suite 1400
San Francisco, CA 94111

6

Tel: (757) 930-3660
Fax: (757) 257-3450

7

craig@clalegal.com

8

**/s/ *Octavio Gomez***

9

Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620

10

Georgia Bar #: 617963
Pennsylvania Bar #: 325066

11

The Consumer Lawyers PLLC
412 E. Madison St. Ste 916

12

Tampa, Florida 33602
Cell: (813) 299-8537

13

Facsimile: (844) 951-3933
Primary Email:

14

Tav@theconsumerlawyers.com
Secondary Email:

15

Lisa@theconsumerlawyers.com

16

*Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT